IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RESHONDA MCNEAL, } | |
| } | |
| Plaintiff, } | |
| } | CIVIL ACTION NO. |
| v. } | 07-AR-1059-S |
| } | |
| CITY OF TARRANT, et al., } | |
| } | |
| Defendants. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendants, the City of Tarrant ("the City") and Loxcil Tuck ("Tuck"), for summary judgment in the above-entitled action brought by plaintiff, Reshonda McNeal ("McNeal"). McNeal brings claims of race discrimination pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against the City and asserts a 42 U.S.C. § 1983 claim against Tuck, in her individual capacity, premised on an alleged violation of her right to equal protection under the 14th Amendment. For the reasons that follow, defendants' motion will be granted.

*Summary Judgment Facts[1]*

McNeal, a black female, began her employment with the City in September of 1999 as an Accounting Assistant I. The City is a

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

1

municipality in Jefferson County and is subject to the jurisdiction of the Personnel Board of Jefferson County ("the Personnel Board"). The Personnel Board is a human resources organization established to administer the civil service system in Jefferson County. It is responsible, *inter alia*, for classifying positions, testing candidates for employment, and establishing hiring registers.

Periodically, the Personnel Board conducts a survey to validate the classification of employees within the civil service system and makes classification recommendations to the municipalities based on its findings. The survey process is designed to determine whether the duties actually performed by a particular employee are consistent with that employee's job classification. During the summer of 2005, the Personnel Board surveyed individuals holding the Accounting Assistant I position, including McNeal. As part of the survey process, McNeal completed a questionnaire that required her to describe the types of duties she performed as part of her job. After completing the survey, McNeal submitted it to her supervisors. However, before forwarding the survey to the Personnel Board, Linda Sharp ("Sharp"), McNeal's supervisor, made notations on the survey that questioned the accuracy of some of McNeal's responses. Specifically, Sharp believed that McNeal did not actually perform all of the duties she had listed on the survey. McNeal disputes the accuracy of most of the changes made by Sharp but admits that some of them were

correct.  Nevertheless, the Personnel Board recommended that McNeal's position be upgraded to Accounting Assistant II.

In response to the Personnel Board's recommendations, the Tarrant City Council passed a resolution authorizing the upgrade of the position held by McNeal.  When a position is reclassified, the individual holding that position (the incumbent) has to compete for the reclassified position.  In order to qualify for a general (as opposed to temporary) appointment to the position, the incumbent has to be within the top 10 ranks on the register for the position. At the time the resolution upgrading her position was passed, McNeal did not rank within the top 10 ranks for the Accounting Assistant II position.  However, Tuck did not fill the position immediately.  Instead, Tuck told Sharp to inform McNeal that she should periodically check with the Personnel Board to inquire about her position on the register.  Roger McCullough, a manager at the Personnel Board, states that Tuck called him to discuss possible ways in which to upgrade McNeal.  McCullough states that he advised Tuck that the only way to upgrade McNeal was to wait until she reached the top 10 ranks on the register.  In October of 2007, McNeal moved within the top 10 ranks on the register.  Shortly thereafter, she received an upgrade to Accounting Assistant II.

In the course of their employment, McNeal and Beverly Arnold ("Arnold"), who is white, were responsible for placing the daily bank deposits for the City in a bag and calling Bill Frame

("Frame"), who would pick up the deposits and take them to the bank.  Arnold worked in the city clerk's office as an Accounting Assistant II under the supervision of Cheryl Greene.  McNeal worked in the city electric department as an Accounting Assistant I under the supervision of Linda Sharp.  McNeal was responsible for the electric department's deposits and Arnold was responsible for the city administration's deposits.  On July 22, 2005, the bank deposits were not properly made.  Although McNeal claims that she called Frame to come pick up the deposits on the date in question, the deposits were left unsecured over the weekend.  McNeal's deposit contained more than $17,000 (including $5,000 in cash) while Arnold's deposit contained $1,700 in checks.  In response to this incident, Tuck ordered McNeal's and Arnold's supervisors to take corrective measures.  Cheryl Greene, Arnold's supervisor, merely wrote Arnold a mildly-critical memo.  Arnold testified that Tuck told her to "outline procedures" to Arnold.  However, Sharp, McNeal's supervisor, issued a formal reprimand to McNeal.  Sharp testified that she and Tuck discussed giving McNeal a reprimand.

McNeal filed her charge of discrimination with the EEOC on September 20, 2005.[2]  On September 29, 2006, the EEOC issued a letter notifying the parties that it had determined that there was reasonable cause to believe that McNeal had been discriminated

---

[2] McNeal's EEOC complaint incorrectly stated that she ranked within the top 10 positions on the register for Accounting Assistance II at the time she filed the complaint. (McNeal Dep. 223:19-224:10; 265:21-266:1.)

against.  A right-to-sue letter was issued on March 20, 2007. McNeal filed her complaint in this court on June 7, 2007.

*Discussion*

McNeal claims that the City discriminated against her on the basis of race by failing to promote her to the Accounting Assistant II position at the time her position was reclassified and by imposing disparate discipline against her in relation to the bank deposit incident.  Both claims are based solely on circumstantial evidence.  Although McNeal asserts claims under Title VII and § 1981, the familiar *McDonnell Douglas* burden-shifting framework applies to both.  *See Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

In order to make out a *prima facie* case of race discrimination in the context of a failure to promote, a plaintiff must prove that: 1) she is a member of a protected class; 2) she was qualified and applied for the promotion; 3) she was rejected despite her qualifications; and 4) other equally qualified or less qualified employees who were not members of the protected class were promoted.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

The City argues that McNeal cannot make out a *prima facie* case because she was not qualified for a promotion at the time she filed her EEOC complaint inasmuch as she was not within the top 10 ranks on the Accounting Assistant II register.  McNeal argues that she

5

was qualified because the Personnel Board recommended that her position be upgraded and because she was listed on the register.

In order to be eligible for an general appointment to the reclassified Accounting Assistant II position, McNeal would have had to rank within the top 10 on the register. It is undisputed that McNeal did not rank within the top 10 at the time her position was upgraded. Therefore, she did not qualify for a permanent appointment. McNeal was also ineligible for a temporary appointment to the upgraded position because her name appeared on the register (*i.e.*, she had previously tested for the position). The Board's class survey implementation instructions make clear that an incumbent whose position is upgraded can only qualify for a temporary appointment to the upgraded position if the incumbent's name does not appear on the existing register for the upgraded position. (Def.'s Ex. R.)  This policy is designed to accommodate employees whose positions are unexpectedly upgraded and who had not previously tested for the upgraded position. The policy allows the incumbent to be placed into the reclassified position on a temporary basis until he or she has an opportunity to test or otherwise qualify for the position on a permanent basis.[3]  Because

---

[3] The comparators suggested by McNeal (Linda Sharp, Diedre Arnold, and Beverly Self) were all given temporary appointments to the position of Accountant after their positions were reclassified until they were able to test for the Accountant position.  After Arnold and Self tested and failed to score within the top 10 ranks for their positions, they were returned to their previous classifications.  Sharp retired before she had an opportunity to take the test.  Therefore, none of the proffered comparators are similarly situated to McNeal, who tested for the Accounting Assistant II position before the

she had previously tested for the Accounting Assistant II position but did not rank within the top 10, McNeal was not qualified for a promotion on either a permanent or temporary basis to the upgraded position.  Therefore, she cannot make out a *prima facie* case of race discrimination with respect to her failure to promote claim.

McNeal also makes a disparate treatment claim under Title VII and § 1981 with respect to the reprimand she received for allegedly failing to secure the bank deposit on July 22, 2005.  In order to make out a *prima facie* case, a plaintiff must prove that: 1) she belongs to a protected class, 2) she suffered an adverse employment action, 3) she and similarity-situated non-protected persons were treated differently, and 4) she was qualified to do the job. *See Mathis v. Wachovia Bank*, 255 Fed. Appx. 425, 429-30 (11th Cir. 2007).

The Eleventh Circuit has made clear that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001).[4]  In order to qualify as an "adverse employment action" for purposes of a disparate treatment discrimination claim, "the employer's action must impact the

---

reclassification occurred.

[4] The "materially adverse" standard articulated in *Burlington North & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) does not apply to disparate treatment discrimination claims. *See Crawford v. Carroll*, -- F.3d --, 2008 WL 2246677 at *9 n.14 (11th Cir. June 3, 2008).

7

'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Id.* at 1239.  "[T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.*  As stated by the Eleventh Circuit in *Davis*:

> [T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* (emphasis in original).

The employment action at issue here is the reprimand that McNeal received in connection with the bank deposit episode. However, there is no evidence that McNeal suffered any tangible consequences as a result of the reprimand.  Her pay and benefits were not reduced.  In fact, she received a promotion after the reprimand was issued.  A written reprimand that does not lead to any tangible consequences does not constitute an adverse employment action for purposes of establishing a *prima facie* case of disparate treatment discrimination.  *See Wallace v. Ga. Dep't of Transp.*, 212 Fed. Appx. 799, 801 (11th Cir. 2006); *see also Hooks v. Bank of Am.*, 183 Fed. Appx. 833, 836 (11th Cir. 2006).  Therefore, McNeal cannot make out a *prima facie* case of disparate discipline discrimination.

8

Because McNeal's § 1983 equal protection claim against Tuck is based on the same conduct discussed above, it fails for the same reasons that her claims against the City fail. Disparate treatment claims brought pursuant to the equal protection clause have the same requirements of proof and use the same analytical framework as Title VII disparate treatment claims. *See Crawford,* 2008 WL 2246677 at *6; *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1082-83 (11th Cir. 1996). Discriminatory intent is an element of both causes of action. *See Abel v. Dubberly*, 210 F.3d 1334, 1338 n.3 (11th Cir. 2000); *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995). As explained above, McNeal cannot make out a *prima facie* case of disparate treatment with respect to the delay in her promotion because she was not qualified for the promotion until she was within the top 10 ranks on the register and cannot do so with respect to the bank deposit incident because the reprimand she received was not an adverse employment action for purposes of federal employment discrimination law. Therefore, McNeal has also failed to establish a *prima facie* case of intentional discrimination with respect to her § 1983 claim against Tuck. *See Underwood v. Perry County Comm'n*, 431 F.3d 788, 793 (11th Cir. 2005). And, even if McNeal's claim against Tuck could reach constitutional proportions under the equal protection clause, Tuck would be qualifiedly immune because she would not be expected to recognize what this court cannot find.

The court also notes that McNeal is unable to point to a similarly situated comparator for purposes of her disparate discipline claim. In cases involving discriminatory discipline, to determine whether employees are similarly situated the court must evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citations and quotation marks omitted). The Eleventh Circuit has held that "the quality and quantity of the comparator's misconduct must be **nearly identical** to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (emphasis added). Arnold, the other employee who was involved in the incident, was not "nearly identical" to McNeal. Arnold and McNeal worked in different departments, had different supervisors, and had different job titles. Even assuming that Tuck caused the alleged disparity in discipline, Arnold's conduct was not sufficiently identical to McNeal's conduct to meet the comparator test. Compared to the checks and cash that McNeal left unsecured, the checks that Arnold left unsecured were for a considerably smaller amount, and, in addition, Arnold did not leave any cash unsecured. Because McNeal left a substantially greater amount of checks and cash at risk, her conduct, while qualitatively similar, is quantitatively different from Arnold's conduct. Therefore, given the absence of a similarly situated comparator, McNeal cannot

prove a necessary element of her § 1983 disparate discipline claim against Tuck. *See McCann v. Tillman,* -- F.3d --, 2008 WL 1991172 at *2-*3 (11th Cir. May 9, 2008); *Eggleston v. Bieluch*, 203 Fed. Appx. 257, 263-64 (11th Cir. 2006).  Accordingly, Tuck is entitled to a judgment as a matter of law with respect to this claim.

## Conclusion

For the foregoing reasons, the court will grant defendants' motion for summary judgment by separate order.

DONE this 24th day of June, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE